REQUESTED BY: Michael G. Heavican Lancaster County Attorney
Are such games as roulette, black jack, craps and other commonly played casino games lotteries as defined by Neb.Rev.Stat. § 28-1101 and sanctioned as legal revenue generators by § 28-1115 for qualifying non-profit organizations?
Yes.
A lottery is defined by § 28-1101(6) (1984 Supp.).
This subsection provides in part:
 (6) Lottery shall mean a gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other medium, one or more of which chances are to be designated the winning ones, (b) the winning chances are to be determined by a drawing or by some other method based on an element of chance, and (c) the holders of the winning chances are to receive cash or prizes redeemable for cash.
The definition of a lottery goes on to exclude, "any gambling scheme which uses any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding monetary prizes, free games redeemable for monetary prizes, or tickets or stubs redeemable for monetary prizes." Therefore, our discussion as to what constitutes a lottery which may lawfully be operated by qualifying non-profit organizations will not include any of said gambling schemes which have specifically been excluded above by statute.
Section 28-1115 (1984 Supp.) authorizes any non-profit organization "holding a certificate of exemption under the Internal Revenue Code, section 501, or whose major activities, exclusive of conducting lotteries, raffles, or gift enterprises, are conducted for charitable and community betterment purposes . . ." to conduct lotteries without securing any further authority provided the gross proceeds are not greater than one thousand dollars and the gross proceeds are used as provided in said section.
The type of lotteries that are authorized by the foregoing sections was clarified to a large extent by the Supreme Court of Nebraska in the case of Contact, Inc. v. State of Nebraska, 212 Neb. 584 (1982).
In discussing the meaning of the statutory definition of "lottery," which was the same then as now appears in § 28-1101(6) quoted in part above, the court concluded that this definition was a codification of earlier case law and that the basic elements required are (1) consideration, (2) prize, and (3) chance. In that case, the court decided that the now familiar "pickle cards" was an authorized lottery because they contained the three elements of chance, prize, and consideration. In that case, the court also relied on a number of other courts which had held punch boards to be lotteries.
The Supreme Court of Nebraska in Contact stated that the statutory definition of a lottery was unambiguous and therefore would be given its plain and ordinary meaning. At that time, there were no specific prohibitions in the lottery definition as are now contained therein and discussed above.
In line with the court's interpretation, and giving the plain and ordinary meaning to the definition of a lottery, we are of the opinion that the Supreme Court of Nebraska would find, if called upon to decide in a proper case, that any schemes, not specifically prohibited, and containing the elements of chance, prize, and consideration, to be lotteries authorized to be operated by qualifying non-profit organizations; (The requirement of a "lottery ticket" was removed from § 28-1115 by the 1984 amendments.) this would include such games as black jack, craps, and other games, not specifically prohibited, which contain the elements set forth in § 28-1101(6).
Roulette, about which you also asked, may arguably fall within the prohibition in the lottery definition of a "mechanical gaming device." However, if the wheel is the only moving part, we are inclined to think it was not meant to be within that term. There is nothing of assistance in the legislative history as to what was intended except as to slot machines and video lotteries. A roulette wheel is better described by the term "device" in § 28-1101(5) (1984 Supp.) defining a "gambling device."
However, tickets, cards, and other items used in the playing phases of schemes authorized to be played by qualifying non-profit organizations under § 28-1115 are not considered gambling devices within the definition of a gambling device found in § 28-1101(5) (1984 Supp.). Since there is no longer any requirement as to the type of "lottery" authorized under § 28-1115, such as a "ticket" type, we must assume those not specifically prohibited in the lottery definition are exempt from the "gambling device" prohibition when conducted by qualified organizations.
We therefore conclude that if the scheme is one which is authorized to be operated by a qualified non-profit organization its devices, records, etc. do not come within the criminal statutes prohibiting the possession of gambling devices, gambling records, etc.
We also emphasize that under § 28-1115 the organization is only authorized to conduct a lottery having gross proceeds of not greater than one thousand dollars unless it is conducted pursuant to the Nebraska Bingo and Lottery Control Act. That Act is contained in part under Chapter 9 of the 1984 Supplement. Section 9-199 (1984 Supp.) makes it a Class IV misdemeanor for any person, except a licensee operating pursuant to the Act, or a qualifying governmental subdivision, to conduct any lottery with gross proceeds in excess of one thousand dollars.
The Act further provides that no non-profit organization may conduct a lottery with gross proceeds in excess of one thousand dollars within the boundaries of any Class VI or Class VII county as classified under § 23-1114.01 (which relates to counties having a population between 60,000 and 200,000, and counties of 200,000 inhabitants or more) or within the corporate limits of any city of the metropolitan or primary class, which would include Lincoln and Omaha, unless specific authorization has been granted by ordinance or resolution of the city or county involved. Any other county or incorporated municipality may by resolution or ordinance tax, regulate, or prohibit any such lottery within its boundaries. See, § 9-195 (1984 Supp.).
There are also other requirements and restrictions contained under Chapter 9 (1984 Supp.) and regulations of the Nebraska Bingo and Lottery Control Commission which must be met by non-profit organizations conducting lotteries with gross proceeds over one thousand dollars.
Very truly yours,
ROBERT M. SPIRE Attorney General
Mel Kammerlohr Senior Assistant Attorney General